IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

SEP 30 2025

Nathan Ochsner, Clerk of Court

| | |
|---|---|
| Mahmoud Abdelaziz Abdelsattar, § | |
| § | |
| *Plaintiff(s)*, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:25−cv−03554 |
| § | |
| Gustavo A Ruiz−Almaraz, § | |
| § | |
| *Defendant(s)*. § | |

## PLAINTIFF'S STATEMENT TO THE COURT REGARDING SEPARATE SUBMISSION OF THE JOINT DISCOVERY AND CASE MANAGEMENT PLAN

To the Honorable Court:

NOW COMES the Plaintiff, Mahmoud Abdelsattar, appearing pro se, respectfully submits his own version of the Joint Discovery and Case Management Plan separately, due to the failure of all reasonable efforts to submit a unified plan with Defendant's counsel. Despite repeated good-faith attempts at cooperation, this separate submission is necessary to ensure the Court has a complete and balanced understanding of the case. The Defendant's proposed plan omits essential elements, appears designed solely to serve his own interests, and seeks to exploit the Plaintiff's pro se status.

### I. Introduction and Basis for Separate Submission

The Plaintiff engaged in the Rule 26(f) process in full good faith. Prior to the September 24, 2025 conference, Plaintiff spent substantial time preparing a detailed draft plan and proposed scheduling order, intended to facilitate cooperation and minimize disputes. These drafts were circulated to Defendant's counsel, Mr. Rolf F. Krueger, before the meeting, consistent with the

1

proportionality and fairness principles required by Rule 26(f).

On September 24, 2025, Defendant's counsel circulated his own draft plan, which disregarded the Plaintiff's detailed submission. After objection, he issued a revised draft on September 29, 2025, asserting that he had made "good-faith efforts" to incorporate Plaintiff's proposals. In reality, the revisions were superficial, and the Defendant's plan continued to omit critical sections, including Plaintiff's initial disclosures and the proposed discovery timetable.

## II. Defendant's Improper Reliance on Expunged Records

More seriously, Defendant's counsel has acted in bad faith by repeatedly attempting to circumvent the expunction order entered by the state court, which permanently expunged all records related to the incident. Despite previously acknowledging—on three separate occasions—that such records were expunged (in their response to the prior complaint, in their motion for an extension of time, and in their current answer), and despite compliance affidavits from all agencies confirming destruction of these records, Defendant's plan still inappropriately request leave to use expunged records, including video evidence. This includes an assertion that they retain possession of the evidence and video footage, intending to halt discovery and file a motion for summary judgment. Defendant further indicates an intent to stay discovery and move for summary judgment based on those same expunged materials.

This conduct is improper. The inclusion of expunged records in the Defendant's plan appears calculated to secure Plaintiff's signature as tacit consent to waive statutory protections under Article 55.03 of the Texas Code of Criminal Procedure. Such consent is legally impossible. Any agreement by Plaintiff would amount to endorsing a direct violation of a binding state-court order. The only admissible video evidence available is that which Plaintiff himself has preserved and intends to produce in accordance with the Federal Rules of Civil Procedure—not records destroyed under the expunction order.

For these reasons, Plaintiff cannot and will not sign Defendant's proposed plan. Instead, Plaintiff submits his own plan, which reflects both the good-faith cooperation mandated by Rule 26(f) and the binding legal limits imposed by the expunction order.

## III. Burden of Proof on Probable Cause

In this §1983 civil rights action, the constitutional violation arises directly from the arrest itself, which is presumed unlawful in the absence of probable cause. The burden lies squarely on the Defendant, as the arresting officer, to demonstrate that—based on the facts known at the time of the arrest—a reasonable officer could have believed that Plaintiff had committed a crime. This burden cannot be shifted to the Plaintiff, whose Fourth Amendment rights guarantee freedom from unreasonable searches and seizures.

The Defendant faces a fundamental barrier: the February 7, 2025 expunction order entered by the Fort Bend County District Court. Under Article 55.03 of the Texas Code of Criminal Procedure, all records related to Plaintiff's arrest—including reports, booking data, and video recordings—were permanently destroyed. Texas precedent is clear that expunged records are deemed not to exist and are barred from use or reference by any party (Ex parte S.C., 305 S.W.3d 258, 264 (Tex. App. 2009)).

In good faith, Plaintiff submitted a copy of the official police report solely to demonstrate fabrication when compared to the body-camera recordings in Plaintiff's possession. This disclosure does not waive statutory protections. To the contrary, it highlights the essence of Plaintiff's claim: that Defendant deliberately falsified critical facts by altering the statements of the alleged victim, the witness, Plaintiff, and even his own account, in order to justify an arrest unsupported by probable cause.

Such records, being expunged, are nullities and inadmissible for any substantive use. Even if considered, they do not establish probable cause but merely document post-hoc justifications,

3

raising serious doubts about the arrest's legitimacy and undermining any qualified immunity defense.

## V. Fabricated Evidence and Constitutional Violations

Federal precedent reinforces this principle. Courts are not required to accept a party's version of events when video evidence "blatantly contradicts" it (Scott v. Harris, 550 U.S. 372, 380 (2007)). The video evidence preserved by Plaintiff is decisive: it demonstrates both the absence of probable cause and the intentional falsification of records. Such conduct strips away qualified immunity, as fabricating official reports to justify an unlawful arrest is a clearly established constitutional violation.

Accordingly, the Defendant cannot rely on expunged or nonexistent records to justify an arrest that was, in itself, unconstitutional. The Court should reject any attempt to reintroduce expunged materials and instead proceed toward resolving liability based on the admissible, conclusive evidence.

## VI. Absence of Probable Cause Confirmed by Judicial Rulings

Even considering the fabricated report authored by Defendant, the criminal court expressly held that no probable cause existed, and the District Attorney likewise concluded there was no probable cause or even arguable suspicion, based on four critical factors:

1. **Location:** All events occurred inside Plaintiff's private room, a space lawfully occupied under a valid lease. Any entry without consent was unlawful.

2. **Physical Injury:** Plaintiff sustained a head injury to the back of his skull—an injury inconsistent with being the aggressor and clearly indicating he was the victim. Defendant had a duty to protect Plaintiff, not to arrest him.

3. **Alleged Victim's Admission:** The individual cited as the "victim" admitted that Plaintiff had rented the room and that he entered Plaintiff's room unlawfully to force him out. Under Texas law, such an entry is trespass. This admission directly negates any probable cause.

4. **Absence of Complaint:** The alleged victim declined to press charges, refused to pursue prosecution, and affirmatively denied that Plaintiff assaulted him.

Taken together, these factors led the District Attorney to determine that Plaintiff was the actual victim and that no reasonable officer could have believed Plaintiff committed a crime. Consequently, the incident was not classified as a misdemeanor, and the record was expunged in full.

The absence of probable cause cannot be separated from the discriminatory nature of Defendant's conduct. Plaintiff was a lawful tenant and an actual victim of assault inside his rented room. Yet Defendant disregarded these facts and falsified an official report to justify an unlawful arrest. This conduct reflects discriminatory bias based on Plaintiff's national origin and accented English, showing malicious intent and violating the Fourth and Fourteenth Amendments.

## VII. Impact on Qualified Immunity

In any motion for summary judgment raising qualified immunity, Defendant bears the burden of disproving these allegations and affirmatively establishing probable cause at the time of arrest. That burden must be carried **without reliance on expunged evidence,** which state law renders void and inadmissible. Even if such records were considered, they document events after the fact and do not establish probable cause at the moment of arrest.

Defendant's reliance on general denials, without articulating a concrete basis for probable cause, is legally insufficient. Federal courts hold that once a plaintiff demonstrates a constitutional violation, the burden shifts to the officer to show that his conduct was objectively reasonable under clearly established law. Here, the absence of any contemporaneous justification, combined with evidence of fabrication, destroys the defense of qualified immunity.

## VIII. Conclusion and Requested Relief

For the foregoing reasons, Plaintiff respectfully submits that: The arrest at issue was unconstitutional under the Fourth Amendment, as it was executed without probable cause and based instead on fabricated evidence. 2.Defendant's conduct—falsifying the police report and disregarding exculpatory facts—constitutes malicious intent and discriminatory animus in violation of the Fourteenth Amendment. 3.All records subject to the February 7, 2025 expunction order are void as a matter of law and cannot be relied upon by Defendant in any form. Plaintiff's limited reference to the police report was made solely to establish falsification, not to waive statutory protections. 4.The body-camera videos and other evidence preserved by Plaintiff conclusively demonstrate the absence of probable cause and the fabrication of official records. Under Scott v. Harris, 550 U.S. 372 (2007), such video evidence may resolve factual disputes and requires denial of qualified immunity.

Accordingly, Plaintiff respectfully requests that the Court: Reject any attempt by Defendant to rely on expunged records; Permit discovery to proceed in accordance with the proposed schedule; Reserve resolution of qualified immunity for summary judgment after targeted discovery; and Grant any other relief necessary to ensure a fair adjudication of Plaintiff's claims under 42 U.S.C. § 1983.

Respectfully submitted,

//S// MAHMOUD ABDELAZIZ
P.O. Box 2708, Humble, TX 77347
631-739-5972
m.abdelaziz.eg.com@gmail.com
PRO SE (Self-represented)

## Certificate of Service

I hereby certify that on [SEPTEMBER 30, 2025 ] a true and correct copy of the foregoing [Joint Discovery and Case Management Plan / Plaintiff's Discovery and Case Management Plan] was served on all counsel of record via electronic service through the Court's CM/ECF system and by email, pursuant to Federal Rule of Civil Procedure 5(b).

Served on:
**1. Rolf Frank Krueger , II**
Fort Bend County Attorney's Office
*State Bar No. 24080990*
*Federal ID No. 3041756*
*rolf.krueger@fortbendcountytx.gov*

**2. Andrew Wipke**
*State Bar No. 24090824*
*Federal ID No. 3920393*
*andrew.wipke@fortbendcountytx.gov*
*Fort Bend County Attorney&#39;s Office*
*401 Jackson Street, 3rd Floor*
*Richmond, Texas 77469*
*(281) 341-4555*